# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**DON ADKINS, ELLEN ADKINS, and
DON ADKINS o/b/o T.A., a minor,**

    Plaintiffs,

v.

**TFI FAMILY SERVICES, INC., et al.,**

    Defendants.

Case No. 13-2579-DDC-GLR

## MEMORANDUM AND ORDER

On September 26, 2017, the court held a hearing to consider approval of the settlement agreement between plaintiffs Don Adkins, Ellen Adkins, and T.A. (T.A. is a minor child) and defendants TFI Family Services, Inc.; Kelli Ann Hegarty; Nonprofit Solutions, Inc.; Kansas Family and Children, Inc.; TFI Family Connections, LLC; Pathway Family Services, LLC; and Kyds, Inc. Plaintiff Don Adkins appeared in person and through counsel at the hearing. Ellen Adkins and T.A. appeared through counsel. Defendants appeared through counsel. The court asked the parties to address two issues during the hearing: subject matter jurisdiction and the reasonableness and properness of the agreement.

## I. Subject Matter Jurisdiction

The court first directed the parties to address the threshold issue of subject matter jurisdiction. The court has an independent obligation to satisfy itself that subject matter jurisdiction is proper. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). And, it "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521

(10th Cir. 1991); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiffs allege that the court has diversity jurisdiction under 28 U.S.C. § 1332. Doc. 97 at 4 ¶ 15. Section 1332 of Title 28 of the United States Code requires complete diversity between all plaintiffs and all defendants. 28 U.S.C. § 1332(a)(1); *see also Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004). But, the operative Complaint fails to allege facts sufficient to allow the court to determine whether diversity of citizenship exists. For defendant corporations, other than TFI Family Services, Inc.,[1] plaintiffs merely allege the corporations' state of incorporation.[2] For defendant limited liability companies, plaintiffs merely allege their state of citizenship.[3] So, at the hearing, the court required the parties to provide sufficient facts to determine it has subject matter jurisdiction over these claims.

To establish diversity jurisdiction, the citizenship of a business entity is determined by its organizational structure. If the business is a corporation, its citizenship is both the state where it is incorporated and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1); *Newsome v. Gallacher*, 722 F.3d 1257, 1267 (10th Cir. 2013). If the business is a limited liability company, its citizenship is determined by the citizenship of each one of its

---

[1] *See* Doc. 97 at 2 ¶ 2 ("Defendant TFI Family Services, Inc. ('TFI') is a Kansas not for profit Corporation and is a citizen of the State of Kansas. . . . Its principal place of business, upon information and belief, is in Emporia, Lyon County, Kansas and it also maintains multiple offices throughout the State of Kansas and in multiple other states.").

[2] *See* Doc. 97 at 3 ¶ 5 ("Defendant Nonprofit Solutions, Inc. ('Nonprofit Solutions') is a Kansas not for profit Corporation and is a citizen of the State of Kansas."), 3 ¶ 7 ("Defendant Kansas Family and Children, Inc. ('Kansas Family and Children') is a Kansas for profit Corporation and is a citizen of the State of Kansas."), 4 ¶ 13 ("Defendant Kyds, Inc. ('Kyds') is a Kansas for profit corporation and is a citizen of the State of Kansas.").

[3] *See* Doc. 97 at 3 ¶ 9 ("Defendant TFI Family Connections, LLC ('TFI Family Connections') is a Kansas limited liability company and is a citizen of the State of Kansas."), 4 ¶ 11 ("Defendant Pathway Family Services, LLC ('Pathway') is a Kansas limited liability company and is a citizen of the State of Kansas.")

members. *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) ("Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the citizenship of all its members."); *see also Birdsong v. Westglen Endoscopy Ctr., LLC*, 176 F. Supp. 2d 1245, 1248 (D. Kan. 2001).

Defendant now has provided the requisite facts. In an affidavit, the chief executive officer for defendant TFI Family Services, Inc. asserts that:

> 3. TFI Family Services, Inc. is a Kansas not-for-profit Corporation incorporated in the State of Kansas and with a principal place of business in the State of Kansas.
> 4. Kansas Family and Children, Inc. is a Kansas for-profit Corporation incorporated in the State of Kansas and with a principal place of business in the State of Kansas.
> 5. Kyds, Inc. is a Kansas for-profit Corporation incorporated in the State of Kansas and with a principal place of business in the State of Kansas.
> 6. Nonprofit Solutions, Inc. is a Kansas not-for-profit Corporation incorporated in the State of Kansas and with a principal place of business in the State of Kansas.
> 7. Pathway Family Services, LLC is a single-member LLC, and the sole member is TFI Family Services, Inc.
> 8. TFI Family Connections, LLC is a single-member LLC, and the sole member is TF1 Family Services, Inc.

Doc. 230-1 at 1–2. The court thus finds that defendants TFI Family Services, Inc.; Kansas Family and Children, Inc.; Kyds, Inc.; Nonprofit Solutions, Inc; Pathway Family Services, LLC; and TFI Family Connections, LLC are citizens of Kansas. In plaintiffs' First Amended Complaint, they assert that Don Adkins, Ellen Adkins, and T.A. were citizens of Georgia at the time the action was filed in 2013. Doc. 97 at 2 ¶ 2. At the time of filing, all defendants were citizens of Kansas and all plaintiffs were citizens of Georgia. The court thus finds that no plaintiff is "a citizen of the same State as any defendant." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) (citing *Snyder v. Harris*, 394 U.S. 332, 338–39 (1969)).

Based on the affidavit (Doc. 230-1) and plaintiffs' First Amended Complaint (Doc. 97), the court determines that the parties have alleged sufficiently that they are completely diverse for diversity jurisdiction purposes under 28 U.S.C. § 1332.

3

## II. Reasonableness and Properness of the Agreement

The court used the substantive portion of the September 26, 2017 hearing to "determine whether the [settlement] agreement is in the minor's best interests" as required by Kansas law. *White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. App. 2001). But, the parties ask the court to interpret the settlement agreement under Georgia law. Doc. 228 at 3 ¶ 7.g. ("Based upon the substantial nexus with the State of Georgia, including the Georgia residency of the Adkins, including T.A., and the adopted boys, a majority of the incidences that were alleged to have occurred were in the State of Georgia and the majority of past and present expenses and services have been and will be incurred in the State of Georgia, the settlement agreement and release is being construed and interpreted according to the laws of the State of Georgia."). As explained below, the court finds that the settlement agreement is sufficient under both Georgia and Kansas law. So, the court need not determine which applies here.

### A. Georgia Law

Georgia imposes statutory requirements on settlement agreements involving minors. *See* Ga. Code Ann. § 29-3-3. These requirements turn on the settlement sum of $15,000 for the minor. "[I]f the proposed gross settlement of the minor's claim is $15,000 or less, the natural guardian[4] of the minor may compromise the claim without becoming the conservator of the minor and without court approval." *Id.* (footnote added). The natural guardian must "hold and use all or part of the settlement for the benefit of the minor and shall be accountable for the settlement for the minor." *See* Ga. Code Ann. § 29-3-1.

Here, the proposed gross settlement of T.A.'s claim is less than the $15,000 limit established in § 29-3-3. And, the settlement agreement proposes to place T.A.'s allocated share

---

[4] "[E]ach parent shall be the natural guardian of any minor child of the parent . . . ." Ga. Code Ann. § 29-2-3.

of the settlement proceeds with Don Adkins as the natural parent and legal guardian of T.A. The court finds that these provisions comply with Ga. Code Ann. § 29-3-3. Also, based on his testimony at the hearing and other evidence, the court finds that Mr. Adkins will use T.A.'s allocation for the benefit of T.A as required by Ga. Code Ann. § 29-3-1. Mr. Adkins signed an affidavit swearing that he would use T.A.'s allocation "solely for the benefit and support of T.A." Doc. 228-1 at 3 ¶ 14. In that affidavit, Mr. Adkins also asserted that he provides and will continue to provide all necessary and living expenses for T.A, as well as, expenses incurred by the allegations of this case. *Id.* at 2 ¶ 13–14. Mr. Adkins also testified during the September 26, 2017 hearing that he would support T.A. as long as necessary, even beyond the age of majority. Mr. Adkins explained that one of his children already has reached the age of majority and he continues to provide living expenses and other support for her. The court thus finds that Mr. Adkins will use T.A's allocations for T.A.'s benefit. For these reasons, the court concludes that the settlement agreement complies with Georgia law.

**B.     Kansas Law**

In contrast to Georgia, Kansas law required the September 26, 2017 hearing, regardless of the sum of T.A.'s allocation. The hearing was necessary because plaintiffs' claims include those of a minor, and the court "has a duty to protect the minor's interests." *Midland Nat. Life Ins. Co. v. Johnson-Marin*, No. 08-1367-MLB, 2012 WL 3245471, at *4 (D. Kan. Aug. 9, 2012) (citing *Thompson v. Maxwell Land-Grant & R.R. Co.*, 168 U.S. 451, 463 (1897); *United States v. Reilly*, 385 F.2d 225, 228 (10th Cir. 1967)). When a settlement agreement settles a minor child's claims, the court should "judicially examine the facts—to determine whether the agreement [is] reasonable and proper." *Mo. Pac. R.R. Co. v. Lasca*, 99 P. 616, 619 (Kan. 1909). Courts are

5

urged "to exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed settlement merely outlined as a 'friendly' hearing." *White*, 31 P.3d at 330.

At the September 26, 2017 hearing, the court received a copy of the settlement agreement among the parties. The court intentionally has omitted reference to the gross settlement amounts in this order, because it recognizes the role that confidential settlement negotiations often plays in the efficient and fair resolution of disputes. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute). Here, the court finds that the interest served by preserving the specific results of confidential settlement negotiations outweighs the public interest in access to the settlement agreement. So, the court enters a separate order memorializing the explicit details of the settlement agreement, which will remain sealed.

Mr. Adkins testified about the anticipated use of the settlement funds and T.A.'s conditions. After considering the testimony and evidence presented by the parties at the September 26, 2017 hearing, the court determines that the settlement agreement is reasonable and adequately protects T.A.'s interests.[5] Although the settlement agreement allocates the vast majority of the settlement to Mr. and Mrs. Adkins, the court determines it is properly allocated. T.A.'s allocation is not for past or future counseling or other expenses incurred from the allegations. Instead, Mr. and Mrs. Adkins' allocation covers those expenses. Their allocation also covers expenses to care for their two adopted boys who are not party to the suit, but are related to plaintiffs' claims. The older adopted boy is currently enrolled in college. And, the younger adopted boy is enrolled in a treatment facility in Tennessee. Mr. and Mrs. Adkins

---

[5] The court finds it particularly noteworthy that Mr. Adkins testified during the September 26, 2017 hearing that he believes if T.A. were forced to endure the spotlight of trial and other legal proceedings he would revert to the withdrawn version of himself and sacrifice the extensive progress he has made during the last year.

expect to have potentially lifelong treatment expenses for the younger adopted boy.  Mr. Adkins testified that T.A.'s limited portion is to be held for T.A.'s future benefit.  And, Mr. Adkins suggested that it may be used for T.A. to attend college.  The court thus finds that the settlement agreement is reasonable and proper.

The court concludes that the settlement agreement is sufficient under both Georgia and Kansas law.  The court thus approves the settlement agreement and grants the parties' Joint Motion to Approve Settlement of Minor Plaintiff's Claims and Dismiss Action with Prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' settlement agreement is approved.

**IT IS FURTHER ORDERED THAT** the parties' Joint Motion to Approve Settlement of Minor Plaintiff's Claims and Dismiss Action with Prejudice (Doc. 228) is granted.  This order shall constitute, for the purposes of Rule 58 of the Federal Rules of Civil Procedure, the court's entry of final judgment of dismissal with prejudice under Rule 41(a)(2).

**IT IS FURTHER ORDERED THAT** defendants' Motion for Partial Summary Judgment on Count V of Plaintiffs' First Amended Complaint (Doc. 122) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendants' Motion for Partial Summary Judgment and For Determination of Choice of Law (Doc. 135) is denied as moot.

**IT IS SO ORDERED.**

**Dated this 29th day of September, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**